IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL CORBETT,

    Plaintiff,                    No.  2:11-cv-1197 JFM (PC)

    vs.

R. MICHAEL HAWKINS, et al.,        ORDER AND

    Defendants.              FINDINGS & RECOMMENDATIONS

_____/

          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Before the court is defendants' motion to dismiss.  Plaintiff opposes the motion.

FACTUAL ALLEGATIONS

          In the operative first amended complaint ("FAC") filed July 12, 2011, plaintiff claims he suffers from a variety of ailments, including hypogonadism, osteopenia, neuropathy, hyperlipemia, chronic back pain, chronic neck pain, chronic shoulder pain, and psoriasis.  Prior to his arrival at Mule Creek State Prison ("MCSP"), plaintiff had standing prescriptions for AndroGel cream for his hypogonadism, Calcium with Vitamin D for his osteopenia, fish oil and Niacin for his hyperlipemia, Neurontin and Ultram for his neuropathy, and Fluocinonide and Ketoconazole shampoo for his psoriasis.  Plaintiff also had chronos for a lower bunk and a soft shoe.

On January 30, 2009, plaintiff arrived at MCSP where he alleges defendants Dr. Michael Hawkins, Dr. Sahir Naseer, R.N. McAlister, and Physical Therapist Stan Schlachter violated his constitutional rights:

1. <u>Allegations as to Dr. Michael Hawkins</u>

    a.    <u>AndroGel Cream</u>

Upon his arrival at MCSP, plaintiff was seen by Dr. Hawkins, who prescribed an injectable form of testosterone to replace plaintiff's AndroGel cream, even after plaintiff informed Dr. Hawkins that the injectable form does not work for him. Dr. Hawkins then referred plaintiff to an endocrinologist, non-party Dr. Rodger Long, who on June 29, 2009 recommended that plaintiff be switched back to the AndroGel cream.

On January 6, 2010, plaintiff filed an inmate grievance because he had yet to be transitioned to the AngroGel cream.

On February 4, 2010, Dr. Hawkins interviewed plaintiff regarding the grievance and granted plaintiff's request for the AndroGel cream.

On March 3, 2010, plaintiff re-submitted the grievance to the second level of review because he had still not received the AndroGel cream.

On March 24, 2010, his grievance was denied at the second level of review by an individual not a party to this suit on the basis that the California Prison Health Care Services ("CPHCS") had reclassified the AndroGel cream and thus it was no longer available for distribution.

Plaintiff claims Dr. Hawkins was aware that the injection of testosterone had not worked for him in the past, and that plaintiff has suffered unnecessary pain and developed a new condition as a result of the regular testosterone injections.

    b.    <u>Other Allegations</u>

On April 13, 2010, Dr. Hawkins saw plaintiff and, instead of examining him or addressing his medical needs, asked plaintiff about his religious background.

2

On an unspecified date, Dr. Hawkins pulled all of plaintiff's chronos without examining him. Plaintiff claims Dr. Hawkins falsified an exam.

2. <u>Allegations as to Dr. Sahir Naseer</u>

On March 19, 2011, plaintiff was seen by Dr. Christopher Smith, who prescribed Ketoconazole shampoo for everyday use for plaintiff's psoriasis.

On April 8, 2011, plaintiff began experiencing muscle spasms. A nurse who examined plaintiff asked Dr. Naseer for methocarbamol for the spasms. Dr. Naseer allegedly denied the request on the ground that plaintiff had an upcoming medical appointment.

On April 19, 2011, plaintiff was seen by Dr. Naseer, who refused to give plaintiff a chrono to shower everyday in order to apply the Ketoconazole shampoo. Dr. Naseer allegedly told plaintiff to simply shower in the sink, which plaintiff said was made difficult by his neuropathy (lower back pain, neck pain, and shoulder pain). Dr. Naseer then denied that plaintiff had neuropathy and threatened to take away plaintiff's pain medication and medical chronos in retaliation for an unrelated lawsuit that plaintiff had filed.

Plaintiff immediately filed an inmate grievance concerning Dr. Naseer's denial of a shower chrono and his threats.

On April 20, 2011, plaintiff was called to the medical line where he saw Dr. Naseer holding the grievance. Plaintiff then realized that Dr. Naseer knew about plaintiff's complaints as to him. When plaintiff turned to walk away, Dr. Naseer called out, "I've already [examined] you, you can go." Plaintiff claims Dr. Naseer falsified a medical report when he claimed to have examined plaintiff but did not in fact examine him. Dr. Naseer also allegedly determined that plaintiff did not need any chronos.

On April 22, 2011, plaintiff had another appointment with Dr. Naseer. Plaintiff claims that in retaliation for the grievance that plaintiff filed against him, Dr. Naseer told plaintiff that he was going to pull plaintiff's neuropathy medication. There is no assertion that Dr. Naseer actually pulled this medication.

3

3. <u>Allegations as to R.N. McAlister</u>

On October 12, 2009, plaintiff slipped and fell, injuring his left leg and his back. Both that day and on October 19, 2009, R.N. McAlister refused to see plaintiff or assess his injuries.

On October 22, 2009, plaintiff filed an inmate grievance concerning R.N. McAlister's refusal to see plaintiff following the fall.

On November 24, 2009, plaintiff was interviewed regarding this complaint. Ultimately, however, the grievance was screened out because it was determined that it did not meet the criteria to be processed as a staff complaint.

4. <u>Allegations as to Physical Therapist Stan Schlachter</u>

On May 18, 2011, plaintiff had an appointment with Stan Schlachter for physical therapy. Plaintiff waited for two hours for this appointment, but was never seen.

5. <u>Allegations as to Unspecified Individuals</u>

Plaintiff also makes claims that are not linked to any particular individual. Although the court can assume to which defendants certain of these claims are related, the court declines to assume facts not specifically provided. These include: (1) a claim that he received a classification chrono on April 15, 2010; (2) a claim that his essential medication was stopped on April 15, 2010, although they were all later reinstated except for the AndroGel cream and fish oil; (3) a claim that his essential medication was again stopped on September 18, 2010, although again the medication was reinstated on October 19, 2010; and, finally, (4) a claim that a non-party doctor ordered an MRI for plaintiff's right shoulder but that the Medical Authorization Review Committee denied this request.

RELEVANT PROCEDURAL BACKGROUND

Giving plaintiff the benefit of the "prison mailbox rule," <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988), this action was initiated on May 2, 2011, and plaintiff is proceeding on the FAC filed on July 12, 2011. The FAC is brought pursuant to 42 U.S.C. § 1983 for violations of

plaintiff's rights under the First and Eighth Amendments; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; and the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq*. Plaintiff also presents a state negligence claim.

When plaintiff's FAC was screened by this court, it was determined that service was appropriate for Dr. Michael Hawkins, Dr. Sahir Naseer, R.N. McAlister, and Stan Schlachter. Notably, the court did not find service appropriate for CPHCS or Dr. Christopher Smith.

On April 9, 2012, defendants filed a motion to dismiss. Plaintiff opposes the motion.

## STANDARDS FOR A MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 551 U.S. 89, 127 S.Ct. at 2200 (quoting Bell Atlantic at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

/////
/////
/////
/////

DISCUSSION

A.     Applicable Standards

    1.     Eighth Amendment Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two prong test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060). In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health ...." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

/////

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a[§ ] 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see also Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's awareness of need for treatment followed by his unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference); see also Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012) (decision of non-treating, non-specialist physicians to repeatedly deny recommended surgical treatment may be medically unacceptable under all the circumstances).

### 2. First Amendment Retaliation Claim

The Ninth Circuit has established that, "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

B. Defendants' Motion to Dismiss

### 1. Claims as to Dr. Hawkins

Defendants argue first that plaintiff's allegations as to Dr. Hawkins fail to state a claim. The court agrees.

7

In the FAC, plaintiff alleges that Dr. Hawkins prescribed testosterone shots even after plaintiff told him that the shots had not worked for him in the past. Yet plaintiff also alleges that Dr. Hawkins referred plaintiff to an endocrinologist and further alleges that, in response to plaintiff's grievance, Dr. Hawkins did in fact prescribe AndroGel cream, which plaintiff was unable to receive because the cream was "no longer available" to inmates due to a reclassification of the medication. These facts do not suggest deliberate indifference.

In his opposition, plaintiff asserts new facts – namely, that Dr. Hawkins retaliated against him by falsifying an exam and by pulling plaintiff's chronos on April 13, 2012, and that Dr. Hawkins pulled all of plaintiff's medication on September 20, 2010. Because these allegations were not presented in the FAC, the court will not consider them in opposition to the instant motion to dismiss.

Accordingly, defendants' motion to dismiss will be granted as to Dr. Hawkins, but plaintiff will be granted leave to amend.

2. <u>Claims as to Dr. Naseer</u>

Defendants argue that plaintiff's allegations as to Dr. Naseer similarly fail to state a claim. The court again agrees.

Plaintiff alleges that Dr. Naseer refused to authorize plaintiff to take a daily shower to apply the Ketoconazole shampoo for plaintiff's psoriasis. Instead, Dr. Naseer told plaintiff to apply the shampoo at his sink. Without more, these bare facts do not state a claim. As already noted, a difference of opinion between medical professionals and between a prisoner-patient and prison medical authorities concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. <u>Toguchi</u>, 391 F.3d at 1058; <u>Sanchez</u>, 891 F.2d at 242; <u>Franklin</u>, 662 F.2d at 1344. Furthermore, plaintiff fails to allege any harm as a result of Dr.Naseer's failure to prepare the shower chrono, his refusal to authorize methocarbamol treatment for plaintiff's muscle spasms, or his alleged falsification of an exam on April 20, 2011.

Defendants' motion to dismiss should thus be granted, but plaintiff should be granted leave to amend.

### 3. Claims as to R.N. McAlister

Defendants seek dismissal of plaintiff's claim against R.N. McAlister on the ground that plaintiff has failed to specify the circumstances of R.N. McAlister's refusal to see plaintiff on two occasions, and has failed to establish that R.N. McAlister acted with deliberate indifference. In his opposition, plaintiff asserts that as a result of R.N. McAlister's refusal to see him, he suffered disabling pain and continues to experience pain. Plaintiff, however, sets forth no facts suggesting that R.N. McAlister acted with deliberate indifference. Accordingly, defendants' motion should be granted as to R.N. McAllister, but leave to amend should be granted.

### 4. Claims as to Stan Schlachter

Defendants' motion to dismiss should also be granted as to Stan Schlachter as there is no constitutional violation on the facts alleged – namely, that Schlachter did not see plaintiff for a scheduled appointment. Plaintiff does not address this argument in his opposition. Thus, this claim should be dismissed without leave to amend.

### 5. Plaintiff's Negligence Claim

Finally, defendants argue that plaintiff's negligence claim should be dismissed for failure to comply with California's Victim Compensation and Government Claims Act ("Tort Claims Act"). Cal. Gov. Code § 945.6.

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board ("Claims Board") no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim and action on or rejection of the claim are conditions precedent to suit, Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal. 4th 1234,

1239 (Cal. 2004); <u>Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1101, 1111 (9th Cir. 2001); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995), and suit must be commenced not later than six months after the date the rejection is deposited in the mail, Cal. Gov't Code § 945.6(a)(1) (quotation marks omitted).

The Tort Claims Act, however, also includes a special tolling provision for prisoners, which provides:

> When a person is unable to commence suit on a cause of action described in subdivision (a) within the time prescribed in that subdivision because he has been sentenced to imprisonment in state prison, the time limit for the commencement of suit is extended to six months after the date that the civil right to commence suit action is restored to such person, except that the time shall not be extended if the public entity establishes that the plaintiff failed to make a reasonable effort to commence the suit, or to obtain a restoration of his civil right to do so, before the expiration of the time prescribed in subdivision (a).

Cal. Gov't Code § 945.6(b). Defendants argue that this tolling provision is no longer available, with citation to <u>Moore v. Twomey</u>, 201 Cal. App. 4th 910 (Cal. Ct. App. 2004), and Section 352.1(b) of the California Code of Civil Procedure. While some courts have continued to apply Section 945.6(b) in the absence of any express invalidation, <u>Lanier v. City of Fresno</u>, 2010 WL 3957440, at *9-11 (E.D. Cal. Oct. 8, 2010); <u>see also</u> <u>Flores v. City of Hayward</u>, 2010 WL 3490221, at *3-4 (N.D. Cal. Sept. 2, 2010), other courts have found that subsection (b) is no longer operative, <u>Brown v. Grove</u>, 647 F. Supp. 2d 1178, 1187 (C.D. Cal. Jul. 16, 2009); <u>Boyd v. Alameda County</u>, 2005 WL 2171870, at *18 (N.D. Cal. Sept. 6, 2005); <u>Moore</u>, 201 Cal. App. 4th at 914 n.2. The undersigned agrees with the reasoning of <u>Moore</u> that Section 945.6(b) "lack[s] any continuing vitality" because prisoners are not precluded from initiating civil actions while in prison. <u>Moore</u>, 201 Cal. App. 4th at 914 n.2. <u>See also</u> Cal. Civ. Code § 352.1

In support of their motion, defendants request that the court take judicial notice[1] of certified records of the Claims Board, which reflect that plaintiff submitted a claim on August 26, 2010 concerning plaintiff's allegation that medical staff at MCSP withheld and/or denied

---

[1] The court takes notice of these documents pursuant to Fed. R. Evidence 201(b).

medication and treatment prescribed by a specialist. Defs.' Mot. to Dism., Ex. A; FAC ¶ 4. On October 21, 2010, the Claims Board rejected plaintiff's claim. FAC ¶ 4. Defendants assert that the Claims Board mailed a notice to plaintiff October 28, 2010, informing him of the rejection. The court has examined the exhibit attached to the motion to dismiss and finds no evidence of an October 28, 2010 notice. Had such notice been provided, it would appear that plaintiff's negligence claim was untimely, having been submitted to the mailroom staff at MCSP on May 2, 2011, instead of within six months of the notice – that is, on or before April 28, 2011. Without evidence of the notice, however, the court cannot make such a finding. Thus, defendants' motion to dismiss should be denied without prejudice as to this ground.

Defendants alternatively argue that plaintiff fails to state a claim for negligence under California law. In general, to state a claim of negligence, a plaintiff must allege: (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) the breach as the proximate or legal cause of the resulting injury. Hoyem v. Manhattan Beach City School Dist., 22 Cal. 3d 508, 514 (Cal. 1978); Hair v. State, 2 Cal. App. 4th 321, 328 (Cal. Ct. App. 1991); Pultz v. Holgerson, 184 Cal. App. 3d 1110, 1116-17 (Cal. Ct. App. 1986); Palm v. U.S., 835 F. Supp. 512, 520 (N.D. Cal. 1993).

On review, the court finds that plaintiff has not made a showing that defendants' actions constituted a breach of a duty of care or how their conduct caused him harm. Leave to amend, however, should be granted.

C.  Leave to Amend

If plaintiff chooses to file a second amended complaint, plaintiff is forewarned to state his claims in a clear fashion with all facts specifically linked to named defendants. In addition, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

11

connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Based on the foregoing, IT IS HEREBY ORDERED that a district judge be assigned to this case; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' April 9, 2012 motion to dismiss be partially granted;

2. Plaintiff be granted leave to amend as set forth in these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 1, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

/014;corb1197.mtd